# United States Court of Appeals
## For the First Circuit

No. 05-2246

JOSE QUINONES,

Plaintiff, Appellant,

v.

HOUSER BUICK,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lynch, Circuit Judge,

Campbell, Senior Circuit Judge,

and Howard, Circuit Judge.

Steven R. Weiner on brief for appellant.
John C. Sikorski and Robinson Donovan, P.C. on brief for appellee.

February 2, 2006

**CAMPBELL, <u>Senior Circuit Judge</u>**.  Appellant plaintiff Jose Quinones appeals from the granting of summary judgment for appellee defendant Houser Buick ("Houser") in the United States District Court for the District of Massachusetts.  We affirm.

## I.  Background and Facts

Quinones, a former automotive technician at Houser, sued Houser for national origin-based employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u> ("Title VII"), and its state counterpart, Mass. Gen. Laws ch. 151B, §§ 1-10 ("Chapter 151B").  Quinones voluntarily left his job in March 2003, but he alleges that the defendant's illegal discrimination against him as a person of Hispanic origin resulted in the "wrongful payment of wages."

Quinones filed his complaint in state court on May 17, 2004 and listed two causes of action:  the Title VII claim and the Chapter 151B claim.  On June 10, 2004, Houser removed the action to federal court.  With the parties' consent, the case was assigned to a magistrate judge for all purposes, pursuant to 28 U.S.C. § 636(c).  The defendant moved for summary judgment, and the magistrate judge entered summary judgment in favor of the defendant on July 14, 2005 on the grounds that Quinones had not introduced evidence demonstrating pretext on the part of Houser.  This appeal followed.

Contrary to the district court's local rule, Quinones failed to submit a concise statement of the material facts of record as to which he contended that there existed a genuine issue to be tried. U.S. Dist. Ct. Rules D. Mass., LR 56.1. Given his omission, the court deemed admitted a number of the facts set forth in the defendant's statement of facts. In its motion and accompanying statement of facts, Houser relied upon excerpts of Quinones' deposition; his answers to interrogatories; an affidavit from Quinones' supervisor, Kevin O'Connor; the deposition of another Houser employee, Jeremy Laduke; and the deposition of Angel Delrio, the owner of Quinones' current place of employment, St. James Custom Auto Body. Quinones filed an opposition to the defendant's motion for summary judgment that was one page in length and that cited no case law. Together with the opposition, Quinones also submitted a number of deposition pages and a personal affidavit. Compiled as described, the record reflects the following facts, which we view in the light most favorable to Quinones, the non-moving party. Roldan-Plumey v. Cerezo-Suarez, 115 F.3d 58, 61 (1st Cir. 1997).

Quinones worked for Houser as an automotive technician on three separate occasions between February 27, 1990 and the day he quit, March 28, 2003. At all relevant times, he worked under O'Connor, Houser's collision repair manager, who is the only person

Quinones contends to have discriminated against him on the basis of his Puerto Rican origin.

When, on March 25, 1999, Quinones began his third tenure at Houser, he asked to be placed on a flat rate pay scale. Thereafter he was not paid on an hourly basis as before but rather at the specific rate computed for each particular repair job. The precise details of how Houser computed the flat rate are not entirely clear from the record. Defendant's employees asserted, however, without contradiction, that Houser's computation of the flat rate involved examining both the estimate and the work order, and that a fast-working and knowledgeable employee could maximize his earnings by completing a job in fewer than the total number of hours Houser assigned to it and by then proceeding on to the next job. In his affidavit, Quinones asserted that under the flat rate system he earned approximately $28,000 per year in 2000 and 2001 and approximately $30,000 in 2002. Quinones went on to allege that Wayne Barnes, a white co-worker, received pay of $1,000 per week under the flat rate system, or about $52,000 a year. Because of this disparity, because he feels he was continuously underpaid, and because he says O'Connor made many slurs regarding his Puerto Rican background, Quinones contends that Houser discriminated against him on the basis of his Hispanic origin.

Houser denied that Quinones had produced any evidence that he was not correctly paid under the flat rate system. Houser

-4-

relied on its employees' depositions and affidavits to the effect that flat rate compensation is a challenging system that places a burden on the employee to understand and utilize it adroitly if he wishes to maximize his compensation. Properly utilized, the flat rate system was said to have the potential to reward employees in excess of an hourly rate system. To maximize earnings on a flat rate scale, however, an employee must complete jobs rapidly, be well-organized, and have a good understanding of how the different repair jobs are estimated and billed. Laduke testified that Barnes was known as an especially capable and productive flat rate employee, while Quinones "had a really hard time gripping" the system. Although he did quality work, Quinones worked more slowly and, from defendant's perspective, did not understand the way the jobs were billed. In his own affidavit, Quinones denied that he did not understand the flat rate system.

O'Connor sat down weekly with the body shop employees, including Quinones, to go over the work diaries he required them to keep. The diaries included their time cards and pay. Quinones did not produce in the instant case any kind of itemization of work in support of his claim that he was incorrectly paid under the flat rate system, nor does the record contain evidence, as distinct from Quinones' general charges, that Barnes was ever unfairly or excessively paid. Houser asserts that the absence of itemization

by Quinones reflected his general inability to grasp Houser's system.

The record does contain statements by Quinones that O'Connor often made comments in his presence demeaning his Puerto Rican heritage. O'Connor denies this but concedes that he may have once told Quinones, "you are a white man in a Puerto Rican body." He says he made the comment "in jest." O'Connor also stated in his affidavit that Quinones told him, "all you Irish are alcoholics." In his brief on appeal, Quinones characterizes his relationship with O'Connor as including "either good natured joking or discriminatory comments."

In his answers to interrogatories, Quinones alleged that his Puerto Rican guests were treated differently from the guests of white employees but at his deposition was unable to state specific dates when such incidents occurred and did not name any of the visitors of white employees who were treated differently. Quinones also alleged, in answers to interrogatories, that he was paid improperly based on the hours that he worked, attaching work orders to his answers. It would be impossible, however, for a fact-finder to determine from what Quinones presented whether or not he was underpaid or whether Houser improperly calculated what was due to him. The information on these subjects is simply incoherent and incomplete. Houser says that Quinones confuses estimates with work orders and points out that he never complained formally of

-6-

underpayment during the almost four years that he worked under the flat rate system.

Quinones alleges, but without documentation or necessary specifics, that he and other Hispanic employees were forced to work from estimates that cheated them out of time actually spent repairing a vehicle. But Quinones could remember only one other employee, George, who was allegedly underpaid, and was unable to recall George's last name. According to Quinones at his deposition, George was an hourly employee, not a flat rate employee. Quinones further claimed that he heard O'Connor make racist comments to "several other Hispanic employees" but could not recall the names of those employees. Quinones did not file a claim for unpaid wages with the Wage and Hour Division of the Massachusetts Attorney General's Office, pursuant to Mass. Gen. Laws ch. 149, §§ 148, 150.

Quinones now works at St. James Custom Auto Body, where Delrio, his boss, pays him an hourly rate because, Delrio testified in his deposition, he believes that flat rate compensation causes misunderstandings between employees and employers.

In his one-page opposition to the motion for summary judgment, Quinones cited excerpts of three depositions: his own, that of Laduke, and that of Terry Mille, another Houser employee. The excerpts from Quinones' deposition reflect his testimony that at management request, he had assisted another employee with his

work and that he was the only Hispanic employee in a high-paying job at the company. The Laduke deposition excerpt reflected Laduke's testimony that he was able to negotiate with Houser to keep his seniority when Houser purchased his former employer. The Mille deposition excerpt reflected Mille's testimony providing the names of the employees working in the office and on the floor. Quinones characterizes the testimony as Mille's stating that Quinones was the only Hispanic employee. Mille did not articulate that point but rather testified when asked about three specific employees that they are white. Mille did not testify that any other employee besides Quinones was Hispanic.

Quinones' personal affidavit acknowledges that Wayne Barnes was a fast auto body man but states that Quinones was a better body man because his work was not returned for corrections as frequently and because Quinones frequently repaired imperfect work done by Barnes. Quinones testified that he is able to "produce work in a competent manner and work at a reasonable rate of speed." Quinones asserted further that he had an "excellent understanding of the flat rate system" and that Wayne Barnes had received beneficial treatment that Quinones did not receive. In particular, Quinones charged, but without pointing to specific facts and details supporting these charges, that O'Connor manipulated Barnes' pay in order to provide Barnes with regular income, gave him work credit hours for future work, and gave him

easy jobs that he was able to finish quickly. Quinones also stated that he (Quinones) did not receive the same treatment and that his own weekly pay checks varied wildly in their totals. Quinones testified that O'Connor asked him to help another body shop employee with his work, though Quinones never received similar assistance. Finally, Quinones compared the total money he made over three years ($86,160.67) with that made by Barnes ($210,000.00) and claimed that he should have made the same amount. Attached to the affidavit was an excerpt from Quinones' deposition in which he testified that Wayne Barnes was a fast body man; an excerpt from Laduke about his transferring his seniority to Houser; and a chart listing Quinones' compensation in the year 2002.

## II. Discussion

This Court reviews the district court's grant of summary judgment de novo, viewing the facts, and drawing all reasonable inferences, in the light most favorable to Quinones, and affirming summary judgment only if there is no genuine issue as to any material fact. Roldan-Plumey, 115 F.3d at 61. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party opposing the motion "must set forth specific facts showing that there is a

genuine issue for trial." Fed. R. Civ. P. 56(e). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

As the district court noted, employment discrimination cases alleging disparate treatment ordinarily proceed under the three-step, burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and further explained in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981), St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993), and Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).[1] First, the plaintiff must make out a prima facie case of discrimination. The burden then shifts to the defendant to present a legitimate, non-discriminatory reason, sufficient to raise a genuine issue of material fact as to whether it discriminated against the employee, for the employment decision. Finally, the burden is placed on the plaintiff to demonstrate that the non-discriminatory reason is mere pretext and that the real reason was discrimination. McDonnell Douglas, 411 U.S. at 802; see also St. Mary's Honor Ctr., 509 U.S. at 510-11, 515-16.

---

[1]This analysis applies generally to both Title VII and Chapter 151B claims. See Fite v. Digital Equip. Corp., 232 F.3d 3, 7 (1st Cir. 2000).

-10-

The district court assumed arguendo that Quinones had made out a prima facie case and found that Houser had presented a legitimate reason for the employment decision, i.e., for the relatively low amount paid to Quinones, by its asserting, in effect, that employees like Barnes could legitimately make more than Quinones under the flat rate system by, for example, completing the same job more rapidly, keeping better track of the work he did and seeking the most profitable jobs. In the first sentence of his brief opposition filing, Quinones came close to admitting the defendant's second-stage point: that employees such as Barnes who better understood the flat rate system could earn more in aggregate. Quinones wrote, "employees who knew how to negotiate and/or were aware of their potential benefit to . . . Defendant were able to get more advantageous working arrangements then [sic] other employees." The court then focused on the pretext issue. We do the same.

At the third stage of the McDonnell Douglas framework, it becomes the plaintiff's burden to establish "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves, 530 U.S. at 143 (citation and internal quotation marks omitted). At the summary judgment stage, the plaintiff "must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext

-11-

and whether the real reason was [national origin] discrimination." Thomas v. Eastman Kodak Co., 183 F.3d 38, 62 (1st Cir. 1999). The plaintiff "must produce evidence to permit a reasonable jury to conclude both that disparate treatment occurred and that the difference in treatment was because of [national origin]." Id.

The district court rightly concluded that Quinones had not met his burden at the third stage, stating particularly that "his opposition memorandum is woefully deficient" and that "it is not the court's responsibility--let alone within its power--to cull the entire discovery record looking for facts which might convert such a bald assertion [of discrimination] into a triable issue." See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work."); see also Gonzalez-Pina v. Rodriguez, 407 F.3d 425, 431 (1st Cir. 2005) ("[S]ummary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." (citation and internal quotation marks omitted)).

On appeal, Quinones argues that the district court erred in finding that he did not carry his burden of establishing pretext. However, the selected pages of deposition testimony submitted by Quinones with his opposition memorandum are insufficient to establish that, because he earned less than Barnes,

he was necessarily the victim of discriminatory conduct on the part of his employer. Even accepting at face value Quinones' deposition statement that he felt he was more experienced and produced better work than Barnes, these factors alone would not show that Barnes could not still have managed the flat rate system in such a way as to earn more under it. It is undisputed, even by Quinones, that Barnes was a rapid and knowledgeable worker. It is perfectly possible, without unfair connivance by O'Connor, that Barnes understood and worked the flat rate system more successfully than did Quinones. Quinones' mere conclusory suspicion is no substitute for specific evidence that discrimination was involved. See Johnson v. Nordstrom, Inc., 260 F.3d 727, 733 (7th Cir. 2001) (observing that plaintiff's subjective belief that she is being discriminated against "does not, without more, demonstrate pretext").

Quinones argues that his personal affidavit submitted with his opposition to the summary judgment motion creates disputed issues of material fact, but the affidavit, like his deposition testimony, reflects only Quinones' subjective speculation and suspicion that Barnes' greater earnings must have resulted from discrimination rather than from other possible causes that might just as easily have explained the discrepancy, supra. Quinones appears to rely on Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000), in which we held that a

self-serving affidavit could defeat summary judgment if the affidavit "contains more than the allegations made in [his] complaint [and] provides specific factual information based upon [his] personal knowledge." Id.

Unlike the affidavit in Santiago-Ramos, however, Quinones' affidavit does not contain adequate specific factual information based on personal knowledge to back his allegation of national origin discrimination and so create a triable issue. In large part, it contains only Quinones' own speculation about the way the body shop was run. Thus Quinones cites no supporting evidence to which he could testify in court tending to prove his conclusory allegation that Barnes' higher pay was based on O'Connor's acts of favoritism as opposed to Barnes' own more efficient work or ability to play the system, or for his allegation that Barnes improperly received credit hours that Quinones did not receive. Neither did Quinones indicate how he had come to have personal knowledge of these alleged facts. See Cadle Co. v. Hays, 116 F.3d 957, 961 & n.5 (1st Cir. 1997) (self-serving affidavit could be sufficient to defeat summary judgment but not if it "neither contain[s] enough specifics nor speak[s] meaningfully to matters within [the plaintiff's] personal knowledge"). Further, Federal Rule of Civil Procedure 56(e) requires that all affidavits submitted in conjunction with an opposition to a motion for summary judgment "set forth such facts as would be admissible in evidence."

-14-

Without first-hand knowledge of facts supporting his allegations, Quinones could not simply testify to a belief that Barnes was given advantages that Quinones was not.

As the district court observed, though cases at the third stage of the McDonnell Douglas inquiry are often a close call for the granting of summary judgment, Santiago-Ramos, 217 F.3d at 54, this is not a close call.  Quinones did not produce evidence that Houser's justification for the amounts it paid him was pretextual. His mere unsupported characterizations of why he believed Barnes' total pay was higher was not evidence creating a triable issue.  A reasonable jury would be unable to find on the evidence in this record that Houser had discriminatorily underpaid Quinones.

### III.  Conclusion

The district court's judgment is **affirmed**.