# United States Court of Appeals
## For the First Circuit

No. 05-2238

ISRAEL FORESTIER FRADERA,

Plaintiff, Appellant,

v.

MUNICIPALITY OF MAYAGÜEZ; JOSÉ GUILLERMO RODRÍGUEZ,
in his official capacity as Mayor of Mayagüez;
ROBERTO PÉREZ COLÓN, in his official capacity as
President of the Municipal Assembly of Mayagüez;
JANE DOE; JOHN DOE,

Defendants, Appellees,

JOSÉ GUILLERMO RODRÍGUEZ, in his personal capacity;
ROBERTO PÉREZ COLÓN, in his personal capacity,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO.

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Selya, Lynch, and Howard, Circuit Judges.

Israel Roldán González for appellant.
Vanesa Vicéns Sánchez, with whom Juan Rafael González Muñoz
and González Muñoz & Vicéns Sánchez were on brief, for appellees.

March 1, 2006

**LYNCH**, **Circuit Judge**.  Israel Forestier Fradera, a municipal assemblyman, filed this lawsuit against the Municipality of Mayagüez and certain municipal officials.  He sought compensatory damages, among other relief, for emotional pain and suffering allegedly caused by the defendants' discrimination against him because of his physical disability.  The district court dismissed the claims on summary judgment.

On appeal, Forestier attempts to raise an issue regarding the availability of damages for emotional distress under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134 -- a question that this court has twice considered but not fully resolved.  See Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 127 (1st Cir. 2003); Schultz v. Young Men's Christian Ass'n, 139 F.3d 286, 290-91 (1st Cir. 1999).  We do not reach the damages issue here, because we hold that there is no evidence from which a reasonable factfinder could infer that Forestier suffered discrimination on account of his disability.

## I.

As a result of a car accident in 1970, Forestier suffers from a gait-related impairment.  He wears an orthopedic device and requires the assistance of a cane when walking both short and long distances.  In the 1996 general elections in Puerto Rico, he was elected as an assemblyman to the Municipal Assembly of Mayagüez ("Assembly").  He won reelection in 2000, and, as a member of the

New Progressive Party (NPP), was one of only three Assembly members who were not part of the Popular Democratic Party (PDP).

Meetings of the Assembly and its committees are held in the Assembly Room, which is on the second floor of City Hall and, until March 2003, accessible only via a stairway. Forestier has attended those meetings in the second-floor Assembly Room on a regular basis -- over four hundred times in all -- since the beginning of his tenure. Climbing the stairs to reach the Assembly Room caused him physical pain.

On March 17, 1997, Forestier requested from the Assembly President, Roberto Pérez Colón, permission to move to a seat at the rear of the Assembly Room, where he would have space to lean back, stand up, or move about when sitting became too uncomfortable. That request for a reasonable accommodation was readily granted.

At some point later in 1997, Forestier requested a second accommodation from Pérez, in the form of the installation of an elevator at City Hall.[1] No progress was made. In a petition to the Office of the Solicitor for Persons with Disabilities (OPPI) on March 17, 1998, Forestier alleged that the Municipality took no action on this request.

_____

[1] It is unclear from the record specifically when Forestier made this request. His complaint alleges that he asked for the elevator on March 17, 1997, but his deposition testimony indicates that he made the request later, after he had asked for, and was granted, permission to move to a seat at the rear of the Assembly Room.

At an administrative hearing before the OPPI on November 14, 2000, the Municipality announced its intention to build an elevator as part of a large-scale project to remodel City Hall and agreed to present a report within thirty days on the status of the project. The Municipality also agreed to start that very week on accommodating a third request by Forestier: the installation of handrails that would allow him to support himself as he walked up the stairs to the second-floor Assembly Room.

When, as of January 11, 2001, the handrails had not been installed, the OPPI submitted a motion to the examiner who had presided over the November hearing, requesting that he order the Municipality to comply with its earlier agreement to take immediate steps to install the handrails. The examiner issued an interlocutory order on January 18, 2001, requiring the Municipality to report within ten days the status of both the handrail installation and the remodeling project. Responding on January 30, the Municipality stated that "all steps were taken to install the handrails," and that, "after receiving various quotations," the Municipality had contracted with a company. It explained "[t]hat for reasons beyond our control and the ordinary procedure of these projects, the handrails have not been able to be installed [yet]"; however, it assured the OPPI that the contractor had "informed us that he expects to have [the handrails] installed by next week," and asked for a minimum of twenty days to come into full

-4-

compliance. The handrails were finally installed in February 2001.

According to the defendants, sometime in 2001 or 2002, the Municipality became concerned that the remodeling of City Hall would take longer than expected. It installed a temporary elevator for Forestier, which would be removed when the permanent elevator is installed in the remodeled City Hall. The temporary elevator was installed in March 2003.

In the interim, on February 27, 2002, Forestier filed this suit, seeking injunctive relief and punitive and compensatory damages pursuant to Title II of the ADA, see 42 U.S.C. § 12133, and certain provisions of the Puerto Rico Civil Code, see P.R. Laws Ann. tit. 1, §§ 501-511; id. tit. 31, § 5141. He named as defendants the Municipality, as well as Pérez, the Assembly President, and José Guillermo Rodríguez, the Mayor of Mayagüez, in their official capacities.[2] The defendants, his complaint alleged, "act[ed] with malice and reckless indifference" to his rights by failing to make the City Hall building -- and specifically the Assembly Room -- accessible to him, thereby causing him to suffer physical and emotional pain.

At the time Forestier filed his ADA complaint in court, the temporary elevator had not yet been installed. At an initial

_____

[2]   The complaint also named Pérez and Rodríguez in their personal capacities. Those defendants moved on September 3, 2002 for dismissal of the claims against them in their personal capacities. Forestier acquiesced to the motion, which the district court granted on October 25, 2002.

scheduling conference on December 18, 2002, the district court instructed the defendants to notify the court before January 15, 2003 whether the installation was complete. After requesting a continuance because "the installation of the elevator ha[d] not been concluded due to the supplier's two week recess during the holidays," the defendants informed the court on January 29, 2003 that the installation of the elevator was scheduled to begin on February 1; Forestier confirmed that the elevator was installed as of March 13.

This mooted Forestier's request for injunctive relief. Consequently, at a January 8, 2004 pretrial conference, the district court ordered the defendants to file a memorandum of law addressing the only legal issue that, in the court's view, remained unresolved in the case -- whether Forestier was entitled to compensatory damages for his alleged emotional pain and suffering.[3]

In compliance with the order, on February 2, 2004, the defendants submitted a memorandum, which was accompanied by two exhibits, requesting that the court dismiss Forestier's complaint on two grounds: first, that Forestier had failed to show that Title II of the ADA provided for compensatory damages for emotional harm in a case such as this one; and second, that Forestier had no

---

[3] According to the defendants, Forestier conceded at the pretrial conference that he was not entitled to punitive damages. Forestier does not dispute this; on appeal, he claims only entitlement to compensatory damages.

viable Title II claim because he testified in his deposition that political discrimination, not disability discrimination, motivated defendants' alleged delay in installing the elevator. Forestier filed a reply brief, which referred to defendants' exhibits, as well as to five evidentiary proffers he made with his own filing.

The district court, treating the defendants' initial filing as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, denied the motion on April 25, 2005, concluding that plaintiff's pleadings were sufficient to survive a Rule 12(b)(6) challenge. The defendants filed a motion for reconsideration.

On June 30, 2005, the court reconsidered its April 25 order. It agreed with defendants that "[o]nce extrinsic materials were attached to their request [for dismissal], and referred to by plaintiff[] in [his] opposition, the motion understood to be under Rule 12(b)(6) was converted into one under Rule 56." Upon review of the record in its entirety, the court granted defendants' motion for reconsideration and for summary judgment and dismissed with prejudice Forestier's federal claim. It also declined to exercise supplemental jurisdiction over his claims under Puerto Rico law, dismissing them without prejudice.

## II.

Forestier makes two arguments on appeal. He first argues that the district court abused its discretion in converting

defendants' Rule 12(b)(6) motion into a summary judgment motion. He then attacks, on the merits, the court's summary judgment decision.

The first challenge is mentioned but not developed in his brief. It thus amounts to waiver, and we do not address it.[4] See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Turning to the merits of the summary judgment dispute, we review a district court's grant of summary judgment de novo, Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 329-30 (1st Cir. 2005), drawing all reasonable inferences in favor of Forestier, the non-movant, Nadherny v. Roseland Prop. Co., 390 F.3d 44, 48 (1st Cir. 2004). "'Even in [disability] discrimination cases where elusive concepts such as motive or intent are at issue,' summary judgment is appropriate if the non-moving party rests 'merely upon conclusory allegations, improbable inferences,

_____

[4]    In any event, the rule is clear that "[i]f, on a [Rule 12(b)(6)] motion . . . , matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).  Forestier invited the conversion by submitting evidentiary proffers with his reply to defendants' memorandum.  He cannot now claim to have been caught unawares by the conversion. See Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 3 n.2 (1st Cir. 2004).  He also had the opportunity to and did, in fact, submit an opposition to the defendants' motion for reconsideration/summary judgment.

and unsupported speculation.'" Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003) (quoting Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)). "Thus, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993) (quoting Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993)).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute requires that public entities "take reasonable measures to remove architectural and other barriers to

accessibility."[5]   Tennessee v. Lane, 541 U.S. 509, 531-32 (2004) (citing 42 U.S.C. § 12131(2)).

To survive summary judgment, a plaintiff claiming a violation of Title II must produce evidence, sufficient to raise a genuine issue of material fact, from which a reasonable factfinder could conclude:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

---

[5]   The Supreme Court recently noted that the "reasonable accommodation requirement can be satisfied in a number of ways":

> In the case of facilities built or altered after 1992, the regulations require compliance with specific architectural accessibility standards. But in the case of older facilities, for which structural change is likely to be more difficult, a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services. Only if these measures are ineffective in achieving accessibility is the public entity required to make reasonable structural changes. And in no event is the entity required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservation interests, or effect a fundamental alteration in the nature of the service.

Tennessee v. Lane, 541 U.S. 509, 532 (2004) (citations omitted) (citing 28 C.F.R. § 35.150(a)(2), (a)(3), (b)(1); id. § 35.151).

<u>Parker</u> v. <u>Universidad de P.R.</u>, 225 F.3d 1, 5 (1st Cir. 2000) (emphasis added).

Here, the district court granted summary judgment in part[6] because it found that on this record, Forestier could not "prevail under the requirements set forth for [a Title II] claim." The court determined that "even if [it] were to assume that [Forestier] had a claim for compensatory damages," he had failed to adduce evidence sufficient to allow a reasonable factfinder to infer that he "was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities[,] or was otherwise discriminated against." We affirm, albeit on a slightly different ground. See <u>Colburn</u>, 429 F.3d at 330.

There is no dispute here that Forestier is a "qualified individual with a disability" within the meaning of the ADA, 42

---

[6] The court also held that Forestier had no claim for emotional distress damages. It noted that although this circuit has not definitively resolved the question whether compensatory damages for emotional harm are available under Title II of the ADA, we have held that, at a minimum, "such damages [are] not available when there [is] no evidence of economic harm or animus toward the disabled." <u>Nieves-Márquez</u>, 353 F.3d at 126-27 (citing <u>Schultz</u>, 139 F.3d at 290-91). Forestier, the court found, neither alleged economic harm nor proffered evidence sufficient to show that defendants discriminated against him on account of his disability. On appeal, Forestier does not dispute that he failed to allege economic harm, but he does argue that he is entitled to compensatory damages for emotional pain and suffering because defendants' delay in handling his requests for reasonable accommodations was motivated by disability-based animus and constituted intentional discrimination. Again, we do not reach this issue of damages.

U.S.C. § 12131(2). However, he has failed to make a sufficient showing as to the third element of a Title II claim -- the requirement that the defendants discriminated against him "by reason of [his] disability." Id.

Forestier argues that the "time table of the facts of this case establishes. . . intentional discrimination by Appellees toward Appellant's disability." He emphasizes that despite the Municipality's agreement at the November 2000 administrative hearing to install the bannister and elevator, the handrail was not installed until February 2001 and the temporary elevator was not installed until March 2003, almost six years after he first requested the accommodation from Pérez. Moreover, he argues that the Municipality only took action when prompted by administrative intervention or the threat of a federal lawsuit. From this, Forestier suggests, a reasonable factfinder could infer that the defendants acted with malice or reckless indifference amounting to discrimination toward him on account of his disability.

The defendants admit that there was some delay in the installation of the temporary elevator. They attribute that delay, however, to "bureaucratic inertia," the inevitable complications arising from a major, publicly funded construction project on a historic building. They point out that when it became clear that the installation of the permanent elevator was delayed along with the renovation of City Hall, they offered to, and did, install a

temporary elevator. That effort, too, was hampered by red tape. They argue that no discriminatory action was ever taken against the plaintiff.

Although a chronology of events may be helpful to show an inference of discrimination, no such inference would be reasonable on the record here. The record simply lacks any reasonable basis for an inference that the delay in accomplishing the accommodation -- that is, the installation of the elevator -- was because of Forestier's disability. Not even Forestier's complaint alleges, except in the most conclusory fashion, a connection between the Municipality's delay in installing the elevator and any disability-based animus on defendants' part.

There is a second reason Forestier's claim fails. He did not merely fail to offer specific evidence of disability-based discrimination. The record shows that he actually explicitly disavowed the allegation. In his deposition testimony, Forestier attributed defendants' delay in installing the elevator solely to political discrimination on account of his membership in the minority party, the NPP.[7] When asked his opinion as to why defendants' actions were discriminatory, Forestier replied:

> A:    Why was it discriminatory? Because it
> so happens that the only Legislator that
> arrived at this municipality to oversee the

_____

[7]    Pérez is a member of the PDP, as presumably is Rodríguez, although the latter's political affiliation is not documented in the record.

-13-

> Municipality of Mayagüez and the Mayor, was yours truly.
>
> Q:    That is, that you understood that since the beginning . . . when [the installation of the elevator and handrail] started to be delayed it was because you are an NPP?
>
> A:    Eh, of course!
>
> Q:    And you knew this at the time this complaint was filed?
>
> A:    Well, of course.

He made no mention of animus toward him on account of his disability.

The inherently weak and improbable inference of disability-based animus is further weakened when put into context against the rest of the record. The record shows that every accommodation plaintiff asked for was granted: the defendants timely relocated him to the rear of the Assembly Hall so that he would be more comfortable; provided him, within a few months of being asked to do so at the hearing, with the handrail on the stairs to assist him while the elevator was in the process of being installed; and installed a temporary elevator -- solely to accommodate Forestier -- when it became clear that the installation of the permanent elevator as part of the remodeling of City Hall would take longer than expected. The district court accurately noted that the "Municipality has shown a true good faith effort to comply with the law by acceding to plaintiff's [every] request." Plaintiff's "mere conclusory suspicion" to the contrary "is no

substitute for specific evidence that discrimination [on account of a prohibited category] was involved."  <u>Quinones</u> v. <u>Houser Buick</u>, No. 05-2246, 2006 WL 247893, at *5 (1st Cir. February 2, 2006).

We agree with the district court that summary judgment was appropriate.

## **III.**

We <u>affirm</u>.  The parties shall bear their own costs.