Lizbeth VARGAS–COLON, et al., Plaintiff

v.

HOSPITAL DAMAS, INC., et al., Defendants.

Civil No. 07–1032 (JAG).

United States District Court, D. Puerto Rico.

Feb. 12, 2009.

---

Alejandro J. Fernandez–Muzaurieta, David Efron, David Efron Law Offices, San Juan, PR, PHV Willard E. Bartel, Miller, Stillman & Bartel, LLC, Cleveland, OH, for Plaintiff.

Jose H. Vivas, Vivas & Vivas, Anselmo Irizarry–Irizarry, Matta & Matta PSC, Ponce, PR, Roberto E. Ruiz–Comas, Gonzalez Villamil Law Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is a motion for summary judgment filed by Hospital Damas, Inc. (Docket Nos. 58 and 61). For the reasons set forth below, this Court denies Hospital Damas' motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 2007, Plaintiffs Lizbeth Vargas–Colon ("Mrs. Vargas") and her husband Jaime M. Cedeno ("Mr. Cedeno") filed a medical malpractice on behalf of their minor daughter Lizbeth Cedeno Vargas ("Lizbeth") (collectively "Plaintiffs") against Dr. Nelson Velez Martinez ("Dr. Velez") and Hospital Damas, Inc. (hereinafter "Hospital Damas"). Dr. Velez was Mrs. Vargas' doctor during the pregnancy and birth of Lizbeth. (Docket No. 61, Hospital Damas' Statement of Uncontested Facts, ¶¶ 1–4). On November 28, 2000, the day prior to her admission at Hospital Damas, Mrs. Vargas visited the office of Dr. Velez because she experienced pain. After examining her, Dr. Velez sent Mrs. Vargas to her home with some medication to stop labor. (Docket No. 76, Plaintiffs' Statement of Uncontested Facts ["PSUF"], p. 3). At 5:00 a.m., on the next day, Mrs. Vargas experienced spontaneous rupture of her membranes. (PSUF, p. 3). She contacted Dr. Velez and he saw her at his office. Upon examining Mrs. Vargas, Dr. Velez determined that she had to give birth right away and ordered her to go to the hospital. (PSUF, p. 3). On November 29, 2000, Mrs. Vargas was admitted to Hospital Damas where she gave birth to Lizbeth. (PSUF, p. 3). Lizbeth was born with severe neurological defects, which will require lifelong care. (PSUF, p. 4).

Plaintiffs bring this suit under diversity jurisdiction,[1] pursuant to articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, §§ 5141–42. Basically, Plaintiffs allege that Dr. Velez, and Hospital Damas committed medical malpractice.

---

1. Jurisdiction in this case is premised on 28 U.S.C. § 1332, which mandates that the parties be domiciled in different states and that the claim exceed $75,000.00. "Diversity of Jurisdiction exists only when there is complete diversity, that is, when no plaintiff is a citizen of the same state as a defendant." *Strawbridge v. Curtiss,* 7 U.S. 267, 3 Cranch 267, 2 L.Ed. 435 (1806); *Gabriel v. Preble,* 396 F.3d 10, 13 (1st Cir.2005). In the instant case, there is complete diversity among the parties and the claim exceeds $75,000.

According to Plaintiffs, Dr. Velez and Hospital Damas' negligent acts or omissions caused Lizbeth to be born with severe neurological defects. (Docket No. 14).

Hospital Damas filed a motion for summary judgment alleging that it could not be held liable for Lizbeth's disabilities. According to Hospital Damas, any tort can only be attributed to Dr. Velez. (Docket Nos. 58 and 61). Plaintiffs opposed Hospital Damas' request. (Docket No. 76).

Hospital Damas' motion for summary judgment was referred to a Magistrate Judge. (Docket No. 72). On December 3, 2008, the Magistrate Judge issued her Report and Recommendation. The Magistrate Judge recommended that Hospital Damas' motion for summary judgment be denied because there were several genuine issues of material facts. (Docket No. 86). On December 16, 2008, Hospital Damas objected to the Magistrate Judge's Report and Recommendation. Hospital Damas alleges that the Magistrate Judge erred in concluding that genuine factual controversies precluded its request for summary judgment. (Docket No. 87).

## STANDARD OF REVIEW

### 1. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." *Thompson v. Coca–Cola Co.,* 522 F.3d 168, 175 (1st Cir.2008) (citing Fed.R.Civ.P. 56(c)). The issue is "genuine" if it can be resolved in favor of either party. *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir.2004). A fact is "material" if it has the potential to change the outcome of the suit under governing law. *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In prospecting for genuine issues of material fact, we resolve all conflicts and draw all reasonable inferences in the nonmovant's favor." *Vineberg v. Bissonnette,* 548 F.3d 50, 56 (1st Cir. 2008).

Although this perspective is favorable to the nonmovant, once a properly supported motion has been presented before this Court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant this Court's denial of the motion for summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The opposing party must demonstrate "through submissions of evidentiary quality, that a trialworthy issue persists." *Iverson v. City of Boston,* 452 F.3d 94, 98 (1st Cir.2006) (internal citations omitted). Moreover, on issues "where [the opposing] party bears the burden of proof, it 'must present definite, competent evidence' from which a reasonable jury could find in its favor." *United States v. Union Bank for Sav. & Inv.(Jordan),* 487 F.3d 8, 17 (1st Cir.2007) (citing *United States v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992)). Hence, summary judgment may be appropriate, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." *Forestier Fradera v. Municipality of Mayaguez,* 440 F.3d 17, 21 (1st Cir.2006) (citing *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 173 (1st Cir.2003)). It is important to note that throughout this process, this Court cannot make credibility determinations, weigh the evidence, and make legitimate inferences from the facts as they are jury

functions, not those of a judge. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

### 2. Standard for Reviewing a Magistrate–Judge's Report and Recommendation

Pursuant to 28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b); and Local Rule 503; a district court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. *See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.,* 286 F.Supp.2d 144, 146 (D.P.R.2003). The adversely affected party may "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." *United States of America v. Mercado Pagan,* 286 F.Supp.2d 231, 233 (D.P.R.2003) (citing 28 U.S.C. §§ 636(b)(1)). If objections are timely filed, the District Judge shall "make a *de novo* determination of those portions of the report or specified findings or recommendation to which [an] objection is made." *Rivera de Leon v. Maxon Eng'g Servs.,* 283 F.Supp.2d 550, 555 (D.P.R.2003). A district court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," however, if the affected party fails to timely file objections, the district court can assume that they have agreed to the Magistrate Judge's recommendation. *Alamo Rodriguez,* 286 F.Supp.2d at 146 (citing *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985)).

### DISCUSSION

■ The substantive law of Puerto Rico controls the instant diversity suit. *See Marcano Rivera v. Turabo Med. Ctr. P'ship,* 415 F.3d 162, 167 (1st Cir.2005). Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 governs the liability of a physician in a medical mal-

practice suit. *See Cortes–Irizarry v. Corporacion Insular De Seguros,* 111 F.3d 184, 189 (1st Cir.1997). Said article states that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. In order to prevail in a medical malpractice claim, a plaintiff "must establish (1) the duty owed, (2) an act or omission transgressing that duty, and (3) a sufficient causal nexus between the breach and the harm." *Marcano Rivera,* 415 F.3d at 167 (internal citations and quotation marks omitted); *Cortes–Irizarry,* 111 F.3d at 189. Puerto Rico courts have explained the duty owed to patients as that level of care which, recognizing the modern means of communication and education meets the professional requirements generally acknowledged by the medical profession. *Marcano Rivera,* 415 F.3d at 167–168 (internal citations and quotation marks omitted). This standard is considered national and must be proven through expert testimony. *Id.* (internal citations omitted). "To establish causation under Puerto Rico law, '[a] plaintiff must prove, by a preponderance of the evidence, that the physician's negligent conduct was the factor that 'most probably' caused harm to the plaintiff.'" *Id.* at 168 (internal citation omitted) (alterations in original).

■ A hospital's liability towards its patients is also a firmly established doctrine by the highest court of Puerto Rico as said institutions owe their patients the degree of care that would be exercised by a reasonable and prudent man in the same conditions and circumstances. *Ramirez–Velez v. Centro Cardiovascular,* No. 05–1732, 2007 WL 3146618, at *3–4, 2007 U.S. Dist. LEXIS 81956, at *10 (D.P.R. Oct. 25, 2007). "Puerto Rico courts have held a hospital liable to its patients for malpractice 'on account of a negligent act on the

part of the institution's employees; consequently, the hospital's liability has been predicated on the vicarious liability doctrine.' " [2] *Id.* at *4, 2007 U.S. Dist. LEXIS 81956 at *11 (internal citations omitted). Thus, when a patient goes directly to a hospital for medical treatment and the hospital 'provides' the physicians that treats him/her, the hospital and the physician are jointly liable for any act of malpractice. *Id.*

■ In its objection, Hospital Damas stresses that Plaintiffs' expert, Dr. Bruce L. Halbridge ("Dr. Halbridge"), under oath testified that the baby clearly had an infectious process in the uterus when Mrs. Vargas visited the offices of Dr. Velez, the day prior to the admission at Hospital Damas. Moreover, Hospital Damas pointed to the fact that Dr. Halbridge stated that had the baby been given antibiotic therapy during the prenatal care or the day before the date of admission to Hospital Damas, the baby would be fine.[3] (*See* Docket No. 61–3). Hospital Damas argues that this admission by Dr. Halbridge excludes it of liability for the damages suffered by Lizbeth because even if Hospital Damas' Labor and Delivery Nurses had administered antibiotic therapy at the time of the mother's arrival at Hospital Damas it would not have made any difference in the outcome of the baby's condition. (Docket No. 87).

However, this Court notes that Dr. Halbridge stated in his deposition testimony and in his report that both Dr. Velez and Hospital Damas' Labor and Delivery Nurses breached their standard of care. (Docket No. 76, Exhs. II and III). Moreover, in his report, Dr. Halbridge specifically concluded that Dr. Velez and Hospital Damas' Labor and Delivery Nurses' departure from the standard of care was the "proximate cause of the avoidable brain damage suffered by Lizbeth." (Docket No. 76, Exhs. II). Plaintiffs also submitted the report of Dr. Carolyn S. Crawford ("Dr. Crawford"), which also concluded that Dr. Velez and Hospital Damas were both negligent and that their acts and omissions caused Lizbeth's subsequent problems and deficits. (Docket No. 76, Exh. I, pp. 2–3).

■ After reviewing the aforementioned reports and deposition, this Court finds that Plaintiffs have produced sufficient evidence to establish that there is a genuine factual controversy as to whether Hospital Damas' staff was negligent, and whether

2. Article 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5142, which is the statutory source of the vicarious liability doctrine, states in pertinent part that:

> The obligation imposed by § 5141 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible . . . Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties.

3. Dr. Halbridge stated the following in his deposition:

> Well, this baby was damaged because of the infection of the uterus. This infection in the uterus, at least the early part of it, was likely to be present at the onset of labor on the 28. This baby was allowed to be— remain in utero for an additional day with no antibiotic coverage, which would have been given because of her Group B Strep status, which is unknown, and was allowed to stay in the uterus filled with pus and infection for an additional 20 to 24 hours. And that made a huge difference to the baby. Had the baby been delivered a day before, and delivered also after having the mother been given antibiotic for the Group B strep unknown status, this baby very likely would not have had the brain damage and would have recovered. Would have been normal. (Docket No. 61–3).

said negligence was the proximate cause of Lizbeth's neurological defects. Dr. Halbridge and Dr. Crawford's reports both support Plaintiffs' argument that Hospital Damas' Labor and Delivery Nurses' departure from the standard of care was the proximate cause of the brain damage suffered by Lizbeth. On the other hand, to support its motion for summary judgment Hospital Damas points to Dr. Halbridge's deposition where he arguably admitted that Lizbeth's brain damage could have been avoided if antibiotic treatment had been administered to Mrs. Vargas the day before her admission at Hospital Damas. While this statement could be used to attack Dr. Halbridge's credibility, this is something for the jury to decide as this Court cannot make credibility determinations at the summary judgment stage. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Essentially, Hospital Damas asks us to ignore the conclusions rendered by Plaintiffs' experts because the statement made by Dr. Halbridge in his deposition is more credible. However, a trial court does not have the liberty on summary judgment to ignore evidence merely because it deems other evidence more credible.[4] *Cortes–Irizarry,* 111 F.3d at 190; *see also Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia,* 394 F.3d 40, 44 (1st Cir.2005) (noting that the existence of contradictions, standing alone, is not enough to preclude summary judgment).

Here, Dr. Halbridge and Dr. Crawford's conclusion, if credited by the jury, could support a finding for Plaintiffs on grounds that Hospital Damas' staff was negligent and that their negligence was the proximate cause of Lizbeth's brain damage. On the other hand, the jury could also find that Hospital Damas' allegation that Hal-

bridge's statement if credited, shows that only Dr. Velez and not the hospital caused Lizbeth's birth defects. Consequently, this Court finds that there is a genuine issue as to whether Hospital Damas' staff was negligent and whether said negligence was the cause of Lizbeth's damage. As such, this Court holds that Plaintiffs' claims against Hospital Damas cannot be summarily disposed of.

### CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation. (Docket No. 86). Accordingly, Hospital Damas' motion for summary judgment, (Docket Nos. 58 and 61), is **DENIED.**

IT IS SO ORDERED.

---

**4.** This Court expresses no opinion as to whether Dr. Halbridge's report is more or less credible.