Alejandrina **ORTIZ**, Plaintiff

v.

**HYATT REGENCY CERROMAR BEACH HOTEL, INC.,** Defendant.

**Civil No. 02–2344 (SEC).**

United States District Court, D. Puerto Rico.

March 22, 2006.

ported for 4/6/04–6/25/05 is stricken in its entirety of 31 hours.

Carlos G. Colon–Machargo, Lavergne Ramirez & Colon Machargo PSC, Celina Romany–Siaca, Celina Romany Law Office, Juan M. Frontera–Suau, Frontera Suau Law Office, San Juan, PR, for Plaintiff.

Jose R. Gonzalez–Nogueras, Raquel M. Dulzaides, Kayra D. Montanez–Laboy, Jimenez, Graffam & Lausell, San Juan, PR, for Defendant.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

Before the Court is Defendant's motion for summary judgment (Docket # 35). Plaintiff filed an opposition to said motion (Docket # 51). Defendant filed a reply brief (Docket # 62) and Plaintiff sur-replied (Docket # 67). The Court then referred this case to Magistrate–Judge Justo Arenas for a Report and Recommendation (Docket # 75). Magistrate Arenas issued his report, recommending that Defendant's motion for summary judgment be granted in its entirety, Plaintiff's claims for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII") be dismissed with prejudice and Plaintiff's supplemental law claims under the laws of the Commonwealth of Puerto Rico be dismissed without prejudice (Docket # 76). Plaintiff has filed an objection to the Magistrate's Report (Docket # 77), Defendant replied to said objection (Docket # 80) and Plaintiff sur-replied (Docket # 82). After reviewing the Magistrate's findings, the parties' filings, the case record and the applicable law, the Court will **APPROVE and ADOPT** the Magistrate's findings in their entirety. Accordingly, Defendant's motion for summary judgment will be **GRANTED.**

## Factual Background

Plaintiff in the instant case was a kitchen employee at the Hyatt Regency Cerromar Beach Resort (hereinafter "Cerromar") since July 8, 1996 (Docket # 1 at ¶ 4). During her employment at Cerromar, Plaintiff was allegedly the victim of continuous sexual harassment perpetrated by multiple male employees of Cerromar. As a result of said harassment, Plaintiff filed two (2) separate internal complaints of sexual harassment, one on April 17, 2001 and another on February 26, 2002 (Docket # 1 at ¶¶ 9 & 26). Although in both occasions Cerromar conducted an investigation and took corrective actions against two of the employees allegedly responsible for said harassment,[1] Plaintiff alleges that Cerromar's efforts were flawed and that as such, Cerromar is liable for the sexual harassment perpetrated by its employees. Accordingly, Plaintiff claims relief for sexual harassment and retaliation under Title VII, sexual harassment under Puerto Rico Law 17 of April 22, 1988, 29 P.R. Laws Ann. §§ 155 et seq. ("Law 17"), discrimination under Puerto Rico Law 100 of June 30, 1959, as amended, 29 P.R. Laws Ann. §§ 146 et seq. ("Law 100") and damages under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 5141–42.

## Standard of Review

Pursuant to 28 U.S.C. §§ 636(b)(1)(B), Fed.R.Civ.P. 72(b) and Local Rule 72(a) for the District of Puerto Rico, a District

---

1. The investigations conducted by Cerromar resulted in the termination (and later, resignation) of Mr. Eddie Caraballo and the suspension without pay for two weeks of Mr. Menelio Rivera.

Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. *See Alamo Rodríguez v. Pfizer Pharms., Inc.,* 286 F.Supp.2d 144, 146 (D.P.R.2003). The adversely affected party can "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." *United States of America v. Mercado Pagán,* 286 F.Supp.2d 231, 233 (D.P.R.2003) (*quoting* 28 U.S.C. § 636(b)(1)). Aside from being filed in a timely manner, objections "shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the legal basis for such objection." Local Rule 72(d).

█ The scope of review of a Magistrate's recommendation is set forth in 28 U.S.C. § 636(b)(1)(c). This section provides that "[a] judge of the [district] court shall make a *de novo* determination of those portions of the report or specified findings or recommendations to which [an] objection is made." *Id.* The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," however, if the affected party fails to timely file objections, " 'the district court can assume that they have agreed to the magistrate's recommendation.' " *Alamo Rodríguez,* 286 F.Supp.2d 144, 146 (D.P.R.2003) (*quoting Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985)). Thus, no review is required of those issues to which objections are not timely raised. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987). In fact, a party who fails to file any objections to the Magistrate Judge's Report and Recommendation within ten days of its filing waives his or her right to appeal from the district court's order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir. 1994); *United States v. Valencia–Copete,* 792 F.2d 4, 5 (1st Cir.1986); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir. 1992) ("[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal").

**Applicable Law and Analysis**

We begin by noting that Plaintiff has failed to comply with Local Rule 7.1(e) by filing a document which is thirty-one (31) pages long prior to requesting leave from the Court to do so. Local Rule 7.1(e) makes it unambiguously clear that "except by prior leave of the Court, no memorandum of law in support of or in opposition to . . . an appeal from the recommended decision of a magistrate judge shall [ ] exceed twenty-five (25) pages." Local Rule 7.1(e). In the case at bar, both parties have had ample opportunity to brief the issues. In fact, albeit with prior leave from the Court, the filings on both sides have, at times, far exceeded the page limits allowed by the Local Rules. Now, faced with Plaintiff's non-compliance with the Court's Local Rules, the Court could strike the objection as a whole and review the Magistrate's findings and recommendations as unopposed. However, considering said non-compliance was probably a mere inadvertence by Plaintiff, we will, instead, read and consider the arguments contained in the first twenty-five (25) pages of the document. That is, the Court will consider only Plaintiff's first five (5) objections to the Magistrate's Report.

Plaintiff's objections are the following: (1) the Magistrate erred by concluding that the employees involved in the sexual harassment incidents were supervisors and

not co-workers and in applying the *Far-agher/Ellerth* defense; (2) the Magistrate erred by finding that there was no issue of fact as to Cerromar's negligence in failing to take the affirmative steps to stop the sexual harassment; (3) the Magistrate erred by finding that Cerromar's investigation was adequate; (4) the Magistrate erred by finding that Plaintiff failed to complain about the continued and constant sexual harassment in a timely manner; and (5) the Magistrate erred by finding that the reason for Plaintiff's delay in filing her second complaint of sexual harassment were insufficient to create a triable issue of fact preventing the dismissal of Plaintiff's claim of sexual harassment under Title VII (Docket # 77). Given that all these objections go to the applicability of the *Faragher/Ellerth* defense and/or Cerromar's liability under the traditional negligence standard, we will address these jointly. However, before doing so, we list certain *uncontested* material facts, helpful in the understanding of the facts leading to the instant action and in the adjudication of Cerromar's request for summary disposition:

1. Plaintiff Alejandrina Ortiz began working at Cerromar on July 8, 1996 as a kitchen helper in the first (day) shift (Docket # 38 SUF No. 4).

2. Félix Ruiz was Plaintiff's supervisor in 1996 (Docket # 38 SUF No. 5).

3. On or about 1997, Plaintiff was transferred to work in the second (night) shift (Docket # 38 SUF No. 6).

4. While Plaintiff was working in the night shift in 1997, her supervisors were Menelio Rivera, José Cedeño and Javier Ortiz (Docket # 38 SUF No. 7).

5. In 1998, Plaintiff was reassigned to the first shift and Mr. Ruiz once again became her supervisor (Docket # 38 SUF No. 8).

6. From 1998 until the Cerromar closed operations on July 15, 2003, Plaintiff continued to work in the first shift (Docket # 38 SUF No. 9).

7. In October of 2000, Plaintiff was promoted to Pantry Attendant (Docket # 38 SUF No. 10).

8. During the course of Plaintiff's employment at Cerromar, she was part of the bargaining unit represented by the Gastronomical Workers Union of Puerto Rico. As such Plaintiff was covered by the Collective Bargaining Agreement (CBA) between the Union and Cerromar which included a Grievance and Arbitration Procedure for the union employees (Docket # 38 SUF Nos. 11–13).

9. Plaintiff never presented a case through the Grievance and Arbitration Procedure of the CBA (Docket # 38 SUF No. 14).

10. Cerromar had a sexual harassment policy which established the procedure available for reporting, investigating, preventing and eliminating any act of sexual harassment. It describes what constitutes sexual harassment, establishes a confidential complaint procedure which requires that the complainant file a written incident report to the Director or Manager of Human Resources and/or to the General Manager, and specifies that upon receipt of said report an investigation would be conducted and could result in disciplinary measures against an employee who violates the policy (Docket # 38 SUF No. 16).

11. Plaintiff signed a receipt evidencing that she received the Cerromar's Employee Handbook and that she was responsible for reading and familiarizing herself with it (Docket # 38 SUF No. 17).

12. Supervisors at the Hotel are taught to immediately report to the Human Resources Office any sexual harassment

complaint by an employee, or conversation with an employee to this end (Docket # 38 SUF No. 36).

13. The Human Resources Personnel are instructed to, as soon as they receive a sexual harassment complaint, inform the situation to Mr. David Cardona, Director of Human Resources, who determines whether an investigation will follow (Docket # 38 SUF No. 37).

14. On or about April 16, 2001, Ms. Nivia Montalvo, Assistant Personnel Manager of Cerromar, requested Plaintiff to put her allegations of sexual harassment in writing as per the hotel's sexual harassment policy (Docket # 38 SUF No. 45).

15. On April 17, 2001, Plaintiff handed a written complaint to Ms. Montalvo (Docket # 38 SUF No. 46).

16. As part of the investigation of the allegations made by Plaintiff, Ms. Montalvo interviewed six (6) employees (Docket # 38 SUF No. 48).

17. Mr. Caraballo, who was the Cerromar employee accused of perpetrating the harassment, denied all allegations of sexual harassment against him (Docket # 38 SUF No. 49).

18. Most of the employees interviewed during the investigation of Plaintiff's sexual harassment allegations corroborated the same and described additional incidents against Mr. Caraballo (Docket # 38 SUF No. 50).

19. As a result of said investigation, Mr. Caraballo was initially terminated from employment but he was later allowed to resign by Mr. Cardona (Docket # 38 SUF Nos. 52–53).

20. On or about February 3, 2002, Plaintiff was informed by Mr. Javier Ortiz that she would be transferred to the night shift and Plaintiff replied that she did not want to work said shift because of the alleged sexual harassment she felt at night (Docket # 38 SUF No. 61).

21. Mr. Ruiz was informed of Plaintiff's allegations and proceeded to inform his own supervisor, Mr. James Bellows, of Plaintiff's claims of harassment (Docket # 38 SUF No. 63).

22. On February 7, 2002, Plaintiff went to the Personnel Office to discuss her allegations of sexual harassment with Ms. Montalvo (Docket # 38 SUF No. 66).

23. Again, Ms. Montalvo requested that Plaintiff put her allegations in writing pursuant to the Hotel's sexual harassment policy (Docket # 38 SUF No. 69).

24. After meeting with Ms. Montalvo on February 7 and again, on February 18, 2002, Plaintiff submitted her written complaint on February 26, 2002 (Docket # 38 SUF No. 71).

25. In this written complaint, Plaintiff did not mention sexual harassment incidents suffered on account of Mr. Edwin Salgado and Mr. Menelio Rivera, even though she did mention these incidents during her meeting with Ms. Montalvo on February 7, 2002 (Docket # 38 SUF No. 72).

26. Mr. Cardona handled the investigation and included in the investigation all the people mentioned by Plaintiff (Docket # 38 SUF Nos. 73–75).

27. On April 17, 2002, Mr. Cardona met with Plaintiff again to discuss her allegations (Docket # 38 SUF No. 76).

28. It took Cerromar a period of over two (2) months to investigate Plaintiff's allegations (Docket # 38 SUF No. 80).

29. During this investigation, Mr. Rivera admitted that he had asked Plaintiff to marry him if he ever became a widow but denied all other alleged incidents of harassment (Docket # 38 SUF No. 84).

30. As a result of this investigation, on May 9, 2002, Mr. Rivera was suspended from work without pay for two weeks (Docket # 38, Ex. 55).

## I. Sexual Harassment Claim

In his Report and Recommendation, Magistrate Arenas stated that the parties had not addressed whether the employees who allegedly harassed Plaintiff were her supervisors or coworkers. The Magistrate further stated that said distinction was important to the case at bar, as the application of the *Faragher/Ellerth* affirmative defense was at issue and said defense shields an employer from liability only when the alleged harassers are supervisors and not coworkers. Notwithstanding, the Magistrate analyzed the facts of the case under both legal standards and found it unnecessary to determine whether the alleged harassers were supervisors or coworkers since his recommendation was the same: no liability should be imposed on Cerromar (Docket # 76 at pp. 16–25). We find no fault with the Magistrate's findings.

■ An employer's liability varies depending on whether the alleged harasser is the victim's supervisor or coworker (non-supervisor). *Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 401 (1st Cir.2002). Generally, an employer is vicariously liable "to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The employer may, however, raise an affirmative defense, namely, the *Faragher/Ellerth* defense. The *Faragher/Ellerth* defense is comprised of two elements: (1) whether the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior and (2) whether the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Id.* If the employer proves these two elements, no liability attaches.

■ However, when the alleged harassers are non-supervisors or coworkers, the employer is not vicariously liable. Instead the employer will be held liable only "if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Crowley,* 303 F.3d at 401 (internal quotations omitted); *Molina Quintero v. Caribe G.E. Power Breakers, Inc.,* 234 F.Supp.2d 108, 112 (D.P.R.2002) (*citing White v. New Hampshire Dep't of Corrections,* 221 F.3d 254, 261 (1st Cir. 2000); *Noviello v. City of Boston,* 398 F.3d 76, 95 (1st Cir.2005))(stating that an employer can only be held liable for harassment perpetrated by a coworker when the harassment is causally connected to some negligence on the part of the employer). Therefore, an employer may be held liable if information of the harassment comes "to the attention of someone who is reasonably believed to have a duty to pass on the information." *Crowley,* 303 F.3d at 403 (*citing Sims v. Health Midwest Physician Servs. Corp.,* 196 F.3d 915, 920 (8th Cir. 1999)). Although the standard for the imposition of liability when the harasser is a coworker is more favorable to the employer than the vicarious liability standard, applicable when a supervisor is the harasser, if the alleged harassers are coworkers the employer cannot invoke the *Faragher/Ellerth* defense to shield liability and must prevail on the traditional negligence standard to avoid liability. Naturally, however, the latter not being an affirmative defense for defendants, the plaintiff retains the burden of proof.

In the instant case, it is uncontested that Mr. Felix Ruiz, Mr. Menelio Rivera, Mr.

José Cedeño, Mr. James Bellows, Mr. Javier Ortiz and Mr. Marcos Rodríguez were all supervisors of Plaintiff at some point or another (Docket # 38 SUF Nos. 5 & 7 & Docket # 52, Ex. 2 at p. 2). However, Plaintiff has alleged that Mr. Edwin Salgado, Mr. Onel Rivera, Mr. José Marrero, Mr. Pedro Sierra and Mr. Guadalupe Santana, all coworkers of Plaintiff, regularly harassed her (Docket # 51 at p. 7 & Docket # 52, Ex. 6 at pp. 23, 31–32). Thus, while it is true that in her opposition to Cerromar's motion for summary judgment Plaintiff failed to **explicitly** argue for this distinction, Cerromar failed to do so also and at no point did Plaintiff concede that the latter individuals were supervisors.[2] Accordingly, drawing all inferences in favor of Plaintiff we will assume, for purposes of this Opinion, that at least some of these alleged harassers were co-workers and some were supervisors. We will examine Cerromar's evidence in light of the *Faragher/Ellerth* defense first and then review the same under the traditional negligence standard.

There is no dispute that Cerromar had at all times a comprehensive sexual harassment policy (Docket # 38 SUF No. 16, Ex. 1). This policy defines what constitutes sexual harassment and delineates the procedure to make a complaint. It further provides that a complaint should be made in writing within 10 days from the harassment and to the Director of the Human Resources and/or Personnel Manager. There is also no dispute that Plaintiff knew about this policy and the procedures set forth therein. Evidence thereof is Plaintiff's signed receipt confirming to have received the Employee Handbook with the sexual harassment policy (Docket # 38 SUF No. 17). Said receipt expressly provides that it is the employee's responsibility to read and become familiar with the content of this policy. *See* Docket # 38, Ex. 7. The fact that Plaintiff may have decided not to read, study and become familiar with the same, can be of no consequence to Cerromar. Additionally, the fact that Plaintiff used the procedure set forth in the anti-harassment policy twice, further evidences her awareness of the procedure.

Furthermore, Cerromar has presented ample evidence of the dissemination of it sexual harassment policy and the training provided to the Cerromar employees. *See* Docket # 38, Exs. 10–20. Per the evidence in the record, there can be little doubt that Cerromar meets the first prong of the affirmative defense. *Arrieta–Colón v. Wal–Mart Puerto Rico, Inc.,* 434 F.3d 75, 86 (1st Cir.2006) (while proof that there is an anti-harassment policy with a complaint procedure available to employees is not dispositive, it is certainly relevant); *Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 20 (1st Cir.2002) (the first prong of the affirmative defense is typically addressed by proof that the employer has a anti-harassment policy and a complaint procedure); *Leopold v. Baccarat, Inc.,* 239 F.3d 243, 245 (2d Cir.2001) (the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense).

Next, we examine whether Cerromar has provided sufficient evidence that Plaintiff unreasonably failed to take advantage of the complaint procedure in order to

---

**2.** In fact, in her opposition to Defendant's motion for summary judgment Plaintiff specifically argued that: "[i]n this case the hostile environment was fostered and promoted by peers and superiors. With regard to the misconduct by [] co-employees, Hyatt undoubtedly knew, or certainly should have known, of the unlawful conduct; the action it took was neither prompt nor appropriate." (Docket # 51 at p. 39).

avoid further sexual harassment. Plaintiff avers that she suffered sexual harassment continuously from the time she began her employment at Cerromar, in 1996, until 2002. Notwithstanding, during all that time Plaintiff only filed two complaints with Human Resources, one on April 17, 2001 and another on February 26, 2002 (Docket # 38 SUF Nos. 46 & 71). Plaintiff's explanation for not availing herself of Cerromar's complaint procedure before the year 2001 include allegations that she feared retaliation from coworkers, feared losing her job, was too busy, and/or was in a rush. *See* Docket # 52, Ex. 6 at pp. 60, 65, 73, 88–93, 114,116; Docket # 38, Ex. 4 at p. 123. Noticeably, however, Plaintiff does not explain why in two different occasions she overcame this fear to initiate the complaint procedures nor does she present any evidence, other than her bare allegations, that this alleged fear was reasonable. As such, Plaintiff's unsubstantiated allegations of fear are insufficient to shoulder the burden of summary judgment and counter Cerromar's evidence of diligence in instituting and following its own procedures to eradicate sexual harassment in the workplace. *See Reed v. MBNA Marketing Sys. Inc.,* 333 F.3d 27, 35 (1st Cir. 2003) (more than ordinary fear and embarrassment is needed for a plaintiff to overcome his/her duty to utilize the employer's established complaint procedures to report sexual harassment); *Matvia v. Bald Head Island Management, Inc.,* 259 F.3d 261, 269–70 (4th Cir.2001)(holding that a "nebulous fear" of negative reactions by coworkers is not enough to deprive a company of their affirmative defense); *Shaw v. AutoZone, Inc.,* 180 F.3d 806, 813 (7th Cir.1999) ("[a]n employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment.").

Furthermore, there is no doubt that, at least after April of 2001, the time in which she made her first complaint, Plaintiff had used Cerromar's complaint procedure and this procedure had culminated in her favor with the termination (or resignation) of the alleged harasser, Mr. Caraballo. Accordingly, we find that it was unreasonable for Plaintiff, who knew of the sexual harassment policy and procedure set forth therein and who had successfully invoked the procedure to her advantage, to not avail herself of the procedure to avoid further harassment. *Burlington Indus. Inc., v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (a demonstration of an employee's failure to use the employer's complaint procedure will normally suffice to satisfy the employer's burden under the second element of the defense); *Matvia,* 259 F.3d at 269 (stating that "evidence that the plaintiff failed to utilize the company's complaint procedure will normally suffice to satisfy [the company's] burden under the second element of the defense.") (citation omitted). Per the foregoing discussion, we find, as did the Magistrate, that the *Faragher/Ellerth* defense shields Cerromar from liability arising out of the alleged sexual harassment (hostile work environment) perpetrated by its supervisors.

■ Next, we examine whether under the traditional negligence standard a reasonable jury could hold Cerromar liable for coworker sexual harassment. That is, whether Cerromar "knew or should have known" of the alleged harassment and failed to take prompt corrective action. As to Cerromar's corrective action, mindful of the risk of sounding repetitive, we note the following: Cerromar had an effective and widely disseminated sexual harassment policy in place, Plaintiff was aware of this policy, Cerromar's employees and supervisors received training on sexu-

al harassment, and the procedures set forth in this policy were followed once Plaintiff reported the alleged sexual harassment to Human Resources. Moreover, it remains uncontested that, once Plaintiff formally complained of the sexual harassment, a thorough investigation ensued (i.e. Cerromar conducted approx. 6 employee interviews during the first investigation and 20 during the second), resulting in corrective actions, to wit, the termination (or resignation) of one employee and a suspension without pay of another. *See* Docket # 38 SUF Nos. 48–53 & 73–76, 80, 84, Exs.29 & 34–55. The record is completely devoid of any evidence to suggest that these investigations were flawed, biased or ineffective. Plaintiff's bald assertions to this end simply cannot negate the supporting evidence provided by Cerromar on this respect.

The only issue is then whether Plaintiff's alleged oral complaints to her supervisors, to wit, Mr. Ruiz, Mr. Rivera and Mr. Bellows, prior to, and in between, filing her complaints with Human Resources warrant the denial of summary judgment. We note, first, that Plaintiff's allegations in her unsworn statement under penalty of perjury run, at times, contrary to her testimony under oath. For example, while in her statement she claims to have continuously informed her supervisor, Mr. Ruiz, of the sexual harassment incidents, during her deposition she testified not to have made any specific complaints of sexual harassment from 1997 through 1999 (Docket # 52, Ex. 6 at pp. 87–88). Plaintiff also testified under oath that during the year 2000 she did not inform anyone of the alleged harassment (Docket # 52, Ex. 6 at p. 89–90) and that in 2001 she complained to Mr. Ruiz about incidents pertaining to the theft of her knives from her locker (Docket # 52, Ex. 6 at p. 116). To that end, we conclude that from 1997 until April of 2001, Plaintiff did not notify Cerromar

of the alleged harassment. *See Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 35 (1st Cir.2001) (stating that "[w]e have refused to allow issues of fact to be created simply by submitting a subsequent contradictory affidavit.") (citation omitted).

We turn our attention to the time span between Plaintiff's two complaints to Human Resources to see if during that period (April of 2001 until February of 2002) Cerromar had notice that the sexual harassment was ongoing and yet failed to take action. Even though Plaintiff alleges to have continuously informed her supervisors of the harassment, during her testimony, she failed to provide a coherent time line or specific information about the content of said complaints. Faced with a properly supported request for summary judgment, Plaintiff could not, without more, merely rest on imprecise and vague statements that she continuously complained. The time frame being of the essence, Plaintiff had to anchor her facts to specific dates so as to allow the Court to draw reasonable inferences on her behalf. For instance, Plaintiff's testimony during her deposition reveals that even though she might have informed her supervisors of "being bothered" she never outright complained of sexual harassment to these supervisors until on or about February of 2002, on the eve of being transferred to the night shift. *See* Docket # 52, Ex. 6 at pp. 111, 114, 117. Her testimony also reveals that once she informed Mr. Ruiz of the alleged harassment, when he got back from vacation, sometime in February of 2002, he sent her to the Personnel Department. *See* Docket # 52, Ex. 6 at pp. 121–22. Accordingly, we find that prior to Plaintiff's complaints to the Human Resources Department, Cerromar did not know nor had reason to know of the alleged harassment. That is, Plaintiff has presented no evidence that would lead a reasonable jury to infer that Cerromar acted negligently. Cerromar's request for

summary judgment is **GRANTED** and Plaintiff's Title VII sexual harassment claim will be **DISMISSED WITH PREJUDICE.**

## II. Retaliation Claim

In light of Plaintiff's failure to comply with Local Rule 7.1(e), we find that Plaintiff has failed to properly object to the Magistrate's recommendation that her claim for retaliation under Title VII be dismissed with prejudice. *See Davet,* 973 F.2d at 30–31; *Borden,* 836 F.2d at 6. Accordingly, Plaintiff's retaliation claim will be **DISMISSED WITH PREJUDICE.**

## III. Supplemental Law Claims

Having dismissed all of Plaintiff's federal claims against Cerromar, we will similarly dismiss Plaintiff's Commonwealth law claims under Law 17, Law 100 and Articles 1802 and 1803 of the Puerto Rico Civil Code. *See Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991)("[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the law suit."). Accordingly, Plaintiff's supplemental law claims against Cerromar will be **DISMISSED WITHOUT PREJUDICE.**

## Conclusion

For the reasons stated above, Cerromar's motion for summary judgment is **GRANTED.** Plaintiff's Title VII claims against Cerromar are **DISMISSED WITH PREJUDICE.** Plaintiff's supplemental law claims under the laws of the Commonwealth of Puerto Rico are **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**SO ORDERED.**